IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KARRIE SMITH,
    *Plaintiff*,

v.

MICHAEL WENEROWICZ, et al.,
    *Defendants*.

: 
: 
:    CIVIL ACTION
:    NO. 15-1845
: 
: 
:

**Jones, II    J.**                                                                                                June 22, 2017

## MEMORANDUM

Plaintiff Karrie Smith is incarcerated in the State Correctional Institution at Graterford ("SCI-Graterford"). He brings this action under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free from "cruel and unusual punishment." U.S. CONST. AMEND. VIII. He originally filed a *pro se* complaint that this Court dismissed without prejudice. Plaintiff filed an Amended Complaint with the assistance of *pro bono* counsel.

Before this Court are three motions to dismiss the Amended Complaint on various grounds, including failure to state a claim pursuant to Federal Rule 12(b)(6). For the following reasons, the motions are granted, in part, and denied, in part.

### RELEVANT BACKGROUND

**I.    Factual Allegations**

The Amended Complaint names three of the original defendants: Michael Wenerowicz, superintendent of SCI- Graterford, James Misstishin Sr., corrections institutional safety manager at SCI-Graterford, and Narinder Malhotra, MD, oncologist on behalf of SCI-Graterford. It adds Christopher H. Oppman, director of Bureau Health Care Services at SCI-Graterford, and Stephen

1

Wiener, DO, SCI-Graterford's regional medical director (collectively, "Defendants"). Amend. Compl. ¶¶ 5-9, ECF No. 40.

According to the Amended Complaint, Plaintiff has been incarcerated at SCI-Graterford since 2003. On or around December 8, 2013, Plaintiff sought medical attention for dyspnea, that is, shortness of breath and difficult and labored breathing. After an evaluation at the infirmary, Plaintiff was given pills and sent back to his cell. *Id*. at ¶¶ 11-13, n.1.

About four days later, after an unnamed prison guard noticed that Plaintiff was still suffering from severe dyspnea, Plaintiff was taken back to the infirmary in a wheelchair. While awaiting medical treatment, Plaintiff collapsed and was rushed to Mercy Suburban Hospital where he underwent diagnostic testing for the first time, including an x-ray of his chest, an echocardiogram, and liver function tests. *Id*. at ¶¶ 14-16. Results revealed that Plaintiff suffered from an abnormal accumulation of fluid around the heart, called "pericardial effusion with tamponade," and required emergency surgery to drain the excess fluid, known as a "pericardial window." *Id*. at ¶ 17, nn.2-3. After the surgery, Plaintiff remained at the hospital approximately nine days for necessary treatment until about December 19 when he was discharged. *Id*. at ¶ 18.

Upon discharge, the hospital's medical staff informed Plaintiff that the pericardial fluid had mesothelial cells that might be cancerous. They explained that he might have developed the pericardial effusion because he may be positive for mesothelioma. With this information, he filed a grievance requesting an investigation into whether exposure to asbestos at SCI-Graterford had harmed him and whether proper screenings could have prevented the harm. *Id*. at ¶¶ 21-25.

Despite receiving notice from Mercy Suburban that asbestos exposure may have caused Plaintiff's pericardial effusion, Misstishin, Wenerowicz, and Dr. Malhotra allegedly failed to investigate whether Plaintiff had, in fact, been exposed to asbestos and, if so, whether any

2

preventative measures could have avoided his injuries. *Id*. at ¶¶ 26-27. Wenerowicz declined to investigate because Plaintiff failed to provide any proof of his claim. *Id*. at ¶ 29. Misstishin "merely" informed Plaintiff that "safety is everyone's responsibility." *Id*. at ¶ 28. Because of these "deficiencies" in Misstishin's and Wenerowicz's responses, they were directed to address Plaintiff's concerns further. *Id*. at ¶ 30.

Misstishin and Wenerowicz apparently complied with the directive and, on or around August 15, 2014, they informed Plaintiff that some materials at SCI-Graterford contained asbestos, but "summarily concluded" that Plaintiff had not been exposed to those materials based on a review of his work history. *Id*. at ¶¶ 31, 33. Plaintiff disagrees and avers, upon information and belief, that he was exposed to asbestos at SCI-Graterford. *Id*. at ¶ 30.

Despite having knowledge of the existence of asbestos in the prison, as well as notice of Plaintiff's prognosis of possible mesothelioma, Misstishin and Wenerowicz failed to investigate whether Plaintiff had been exposed to asbestos anywhere other than work, such as in his cell. *Id*. at ¶¶ 33-34. Oppman, the prison's health care administrator, also failed to investigate the matter despite being directed to review Plaintiff's records around October 2014. *Id*. at ¶ 35. And Plaintiff's oncologist, Dr. Malhotra, did not diagnose the cause of his pericardial effusion despite knowing it could reoccur if the source was not identified. *Id*. at ¶ 36, 38. Plaintiff believes Defendants acted with deliberate indifference to his serious medical needs, risking his present and future health and causing him to experience mental and emotional distress. *Id*. at ¶ 37.

Plaintiff claims Defendants' conduct—including but not limited to, delaying Plaintiffs needed medical care, failing to inform Plaintiff that he was potentially exposed to asbestos, failing to investigate whether Plaintiff was exposed to asbestos, and failing to investigate the cause of Plaintiffs pericardial effusion—violates the Eighth Amendment. *Id*. at ¶¶ 43-44.

## II. Procedural Posture

Defendants filed three separate motions to dismiss on various grounds. Wenerowicz and Misstishin move to dismiss for failure to state a claim under Federal Rule 12(b)(6), as does Oppman (together, the "Correctional Defendants"). Dr. Malhotra and Dr. Wiener (the "Medical Defendants") also move to dismiss for failure to state a claim and raise two affirmative defenses: failure to exhaust administrative remedies and untimeliness under the applicable statute-of-limitations.[1] Plaintiff opposes the motions. On June 19, 2017, this Court heard oral argument.

### STANDARD OF REVIEW

In deciding a 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

[1] In the alternative, the Medical Defendants move for summary judgment and submit portions of Plaintiff's medical records. Considering that Plaintiff has not had an opportunity to obtain any discovery, this Court declines the invitation to convert the motion to dismiss into a motion for summary judgment.

4

"As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (quoting 62 FED. PROC., LAWYERS' EDITION § 62:508). "However, the court may consider documents which are *attached* to or submitted with the complaint, as well as . . . documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" *Id.* (emphasis in original). "Documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim*[.]" *Id.* (emphasis in original).

## DISCUSSION

The Amended Complaint states an Eighth Amendment claim against the Correctional Defendants, but not against the Medical Defendants.

## I. The Eighth Amendment Protects against Deliberate Exposure to Asbestos

"[A] cause of action exists under the Eighth Amendment when a prisoner alleges that prison officials have exposed him, with deliberate indifference, to levels of [a known environmental carcinogen] that pose an unreasonable risk of" present or future harm. *Ford v. Mercer Cty. Corr. Ctr.*, 171 F. App'x 416, 419 (3d Cir. 2006) (quoting *Helling v. McKinney,* 509 U.S. 25 (1993), which involved allegations of exposure to unreasonable levels of second hand smoke). Courts have extended *Helling* to cases involving asbestos exposure. *See, e.g., Harris v. Donald*, 266 F. App'x 804 (11th Cir. 2008); *LaBounty v. Coughlin*, 137 F.3d 68 (2d Cir. 1998); *cf. Fontroy v. Owens*, 23 F.3d 63 (3d Cir. 1994).

To succeed on this claim, Plaintiff first "must show that he himself is being exposed to unreasonably high levels of [asbestos]. Second, he must show that the prison officials were deliberately indifferent to the serious risk of harm." *Ford,* 171 F. App'x at 419 (internal citations

5

omitted). For deliberate indifference, Plaintiff "must show that the defendants knew of the health dangers and yet refused to remedy the situation[.]" *LaBounty,* 137 F.3d at 72-73 (citing to *Wilson v. Seiter,* 501 U.S. 294, 302-04 (1991)).

The crux of Plaintiff's claim is that Wenerowicz, Misstishin and Oppman knew asbestos-containing materials were present at SCI-Graterford, and had notice that exposure to asbestos may have caused Plaintiff's pericardial effusion, and yet declined to conduct a full investigation into the alleged exposure despite receiving orders to do so, presumably, by their superiors. The Amended Complaint alleges knowledge of this situation on the part of Wenerowicz and Misstishin: they received notice from the hospital, informed Plaintiff of the asbestos, and were directed to investigate the matter further. Oppman's knowledge may be inferred from his position as the prison's health care administrator and the allegation that he was directed to review Plaintiff's records. *See Smith v. United States*, 561 F.3d 1090, 1105 (10th Cir. 2009) (inferring that, because of their "upper level positions," the warden and safety manager must have known of a survey allegedly documenting the presence of asbestos in the prison). Those allegations are sufficient, at this stage, to show deliberate indifference.

The mesothelioma prognosis, combined with the allegation that asbestos was found in the prison, is also enough to infer that Plaintiff has been exposed to unreasonably high levels of asbestos at SCI-Graterford. *See LaBounty*, 137 F.3d at 74 n.5 (observing that "asbestos poses a significant health risk" that "can lead to asbestosis, mesothelioma and lung cancer"). Although the Amended Complaint notes that the Correctional Defendants have denied Plaintiff's exposure to asbestos at work, it also alleges that they have not ruled out or even investigated whether Plaintiff may have been exposed in his cell or elsewhere. *Cf. Fontroy*, 23 F.3d at 64-65 (allegations of physical injuries and emotional distress caused by asbestos in "cells and common

6

area, and to which Plaintiff was constantly exposed" "can be fairly construed to state" a claim under *Helling*). Lastly, Plaintiff's pericardial effusion, as well as his alleged dyspnea, which prompted a lay prison official to take him to the infirmary, indicates that he is in serious risk of harm. *See Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (stating that a serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."); *cf. Gibbs v. Cross*, 160 F.3d 962, 966 (3d Cir. 1998) (McKee, C.J.) (holding that allegations of asbestos-related symptoms satisfied the "imminent danger of serious physical injury" standard under the Prisoner's Litigation Reform Act). Plaintiff has stated an Eighth Amendment claim against the Correctional Defendants.[2]

The Amended Complaint does not, however, sufficiently allege any claims against the Medical Defendants. There is no indication that Dr. Malhotra or Dr. Wiener knew about the asbestos found in the prison, or that they were involved in the alleged failure to investigate Plaintiff's concerns. Nor is there any allegation that any delays in taking Plaintiff to the hospital are attributable to Dr. Malhotra or Dr. Wiener, or any other defendant for that matter.[3] Plaintiff alleges that Dr. Malhotra is an oncologist, a specialist rather than a primary care provider. It is unreasonable to infer, without more, that Dr. Malhotra would have been present at the prison when Plaintiff experienced his initial symptoms or that he would have been among the first medical providers to see Plaintiff when he underwent the emergency surgery. And there is no

---

[2] The Correctional Defendants argue that failure to investigate a grievance cannot, without more, support liability under section 1983, citing to *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006), *Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014) and *Glenn v. Barua*, 252 F. App'x 493, 498 (3d Cir. 2007). Besides being non-precedential, those cases are inapposite. None of them involve allegations that the failure to investigate results in ongoing exposure to a known environmental carcinogen found in the prison.

[3] The Amended Complaint does not specifically allege that any of the Defendants were present at the time Plaintiff first experienced dyspnea or was taken to the hospital. Nor were any of them allegedly involved in providing medical care at the infirmary or at any time up until and including the emergency surgery.

7

allegation that Dr. Wiener was personally involved in Plaintiff's medical care.  In fact, Dr. Wiener's name is mentioned only once in the pleadings when he is identified as a defendant.  In any event, allegations that prison officials or medical staff delayed, but did not refuse, Plaintiff's medical care sound more like negligence or medical malpractice than constitutional claims.  *See Worthington v. Cty. of Northampton*, 616 F. App'x 35, 36 (3d Cir. 2015) (citing to *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  Likewise, Dr. Malhotra's alleged failure to diagnose alternative causes of Plaintiff's pericardial effusion does not, by itself, state a constitutional violation.  *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (even if a "doctor's judgment is ultimately shown to be mistaken, at most what would be proved is medical malpractice, not an Eighth Amendment violation.").

In sum, Plaintiff has a viable Eighth Amendment claim based on allegations of deliberate indifference to serious harm from asbestos exposure against the Correctional Defendants only.

## II.     None of the Medical Defendants' Affirmative Defenses Bars Plaintiff's Viable Claim

The Medical Defendants' affirmative defenses do not bar Plaintiff's asbestos claim.

On timeliness, the issue is whether adding Dr. Wiener to the Amended Complaint satisfies the relation-back requirements of Federal Rule 15(c)(1)(C): the party being added has notice and knowledge of the action and the amended claim "arises out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B), (C).  The answer is yes.  The claims against Dr. Wiener arise out of the same conduct alleged in the original pleading, that is, deliberate indifference to Plaintiff's serious medical needs in connection with asbestos exposure.  *See* Compl. ¶¶ 8-32, ECF No. 8.  And, because Dr. Wiener and Dr. Malhotra share the same attorney and employer, Dr. Malhotra's notice and knowledge of the original claims may be imputed to Dr. Wiener.  *See Palakovic v.*

*Wetzel*, No. 14-145, 2016 WL 707486, at *10 (W.D. Pa. Feb. 22, 2016), *vacated in part on other grounds,* 854 F.3d 209 (3d Cir. 2017).  This is a pyrrhic victory for Plaintiff, however, since the Amended Complaint does not state a claim against Dr. Wiener.

On exhaustion, the Medical Defendants raise a valid, yet fruitless, point.  Accepting that Dr. Malhotra did not treat Plaintiff, and Dr. Wiener did not start working at SCI-Graterford, until after Plaintiff filed his grievance, the Medical Defendants argue the grievance could not have possibly encompassed his claims against them.  Med. Defs.' Br. 5-8, ECF No. 41-1.  But failure to exhaust one claim does not warrant dismissal of the entire complaint.  *Jones v. Bock*, 549 U.S. 199, 221 (2007) (pertaining to exhaustion, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.").  Based on records subpoenaed by the Medical Defendants, and filed with their motion to dismiss, Plaintiff pursued his grievance for harmful asbestos exposure all the way through the prison's appellate process.  *See* Med. Defs.' Ex. A, ECF No. 41-2.  None of the Correctional Defendants raised an exhaustion defense as to that claim, nor could they.  Thus, while the Amended Complaint fails to state an asbestos claim against the Medical Defendants, Plaintiff may proceed against the Correctional Defendants.

## CONCLUSION

Defendants' motions are denied only insofar as Plaintiff has stated a claim for deliberate indifference to asbestos exposure against Wenerowicz, Misstishin and Oppman.  All other claims and defendants are dismissed.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. Darnell Jones, II    J.